[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] N U N C P R O T U N C
 OPINION
On October 16, 1998, Henry Joseph Couturier was indicted on three counts of corruption of a minor, one count of corrupting another with drugs, and one count of felonious assault. The felonious assault charge alleged that Mr. Couturier "* * * did knowingly cause or attempt to cause physical harm to [J.L.] by means of a deadly weapon, to wit: HIV infection * * *."
The case ultimately proceeded to trial and Mr. Couturier was found guilty of all five charges. The facts giving rise to the convictions are discussed below.
Henry Couturier (hereinafter "appellant") has now pursued a direct appeal, assigning six errors for our consideration:
Assignment of Error One
 THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED INASMUCH AS THE CONVICTION FOR FELONIOUS ASSAULT WAS BASED ON INSUFFICIENT EVIDENCE.
Assignment of Error Two
 THE COURT ERRED IN INSTRUCTING THE JURY REGRADING FELONIOUS ASSAULT AND IN RESPONSE TO THE JURY QUESTION CONCERNING THE INSTRUCTION.
Assignment of Error Three
 THE STATE ERRED BY INTRODUCING STATEMENTS OF THE DEFENDANT THAT WERE NOT DISCLOSED TO THE DEFENDANT PRIOR TO TRIAL.
Assignment of Error Four
 THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error Five
 THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Assignment of Error Six
 THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BY THE PROSECUTOR'S IMPROPER COMMENTS NOT ONLY DURING CLOSING ARGUMENTS BUT THROUGHOUT THE TRIAL.
Several of appellant's assignments of error challenge both the manifest weight and sufficiency of the evidence presented at trial. Preliminarily, therefore, we set forth the respective standards by which we are bound in reviewing these issues.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In Thompkins, the court explained at length the distinctions between the two standards:
 With respect to sufficiency of the evidence, '"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, * * * citing Jackson v. Virginia (1979), 443 U.S. 307 * * *.
When reviewing the sufficiency of the evidence to support a conviction, an appellate court must review the record to determine "whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Supreme Court set forth the stringent standard of review to be applied in a sufficiency analysis:
 "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
In contrast, as explained in Thompkins, supra, a manifest weight analysis is slightly different:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 * * *. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony.Tibbs, 457 U.S. at 42 * * *. See, also, State v. Martin
(1983), 20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.').
Pursuant to the foregoing standards, we examine the record in a light most favorable to the prosecution to determine if the prosecution sufficiently proved beyond a reasonable doubt each element of the offenses charged, and/or whether the jury "lost its way" in convicting appellant such that a manifest miscarriage of justice occurred.
Turning now to appellant's first assignment of error, the primary basis of this appeal, appellant contends that the prosecution failed to prove by sufficient evidence the elements of felonious assault as charged in the indictment.
Felonious assault is defined by R.C. 2903.11. At all times relevant to this case, R.C. 2903.11 read:
(A) No person shall knowingly:
(1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
The prosecution did not pursue a theory under subsection (1) — that appellant had knowingly caused "serious" physical harm to J.L. Instead, the prosecution pursued its case under subsection (2) — asserting that appellant had utilized a "deadly weapon" in causing or attempting to cause physical harm to J.L.
"Deadly weapon" is defined by statute. R.C. 2923.11(A) reads:
(A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed,carried, or used as a weapon. [Emphasis added.]
No doubt exists that HIV can ultimately cause the death of a person who becomes infected; therefore, the "deadly" part of "deadly weapon" is not in dispute. While HIV is "capable of inflicting death," the definition includes the conjunction "and," thus requiring proof of an additional fact: that the virus was "designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." No proof indicates that HIV was designed or specially adapted for use as a weapon. The virus is one which has apparently evolved naturally over a significant period of time. No testimony at trial addressed this question.
Instead, the issue presented here turns on the definition of "weapon" as contemplated by the balance of the above statutory language. No evidence in this case demonstrates that appellant possessed HIV "as a weapon" or carried HIV "as a weapon." Thus, for purposes of this case, the sole question is whether appellant used HIV "as a weapon" when interacting with J.L.
Based upon the evidence presented here, as detailed below, the majority of this panel finds that the state failed to meet its burden of proving that this appellant used HIV as a weapon; accordingly, as a matter of law, appellant's felonious assault conviction was not supported by sufficient evidence. We acknowledged in other situations that HIV could be used as a weapon. See State v. Bird (1998), 81 Ohio St.3d 582.
The evidence presented at trial adduced facts which are, in most pertinent respects, uncontroverted on appeal. In May of 1998, J.L. was only thirteen years of age. Despite her tender years, she sometimes worked as a prostitute.
Appellant provided marijuana to J.L. on at least two occasions in May of 1998. On the second occasion, appellant and J.L. smoked marijuana at his apartment. He then asked J.L. if she wanted to go to the bedroom and she agreed. The two discussed appellant wearing a condom during sexual intercourse. He and J.L. engaged in vaginal intercourse three times. Each time appellant used a new condom, and each time he ejaculated. After the third time, appellant took off the condom and reinserted his penis into J.L.'s vagina, saying that "it felt good inside."
J.L. later learned that appellant was HIV positive and that she also was HIV positive. She denied having unprotected sex with anyone except her boyfriend and the fourth sex act with appellant. Since her boyfriend has tested HIV negative, she is convinced that she acquired HIV from appellant.
J.L.'s situation is undeniably tragic. She considers herself as a crack cocaine addict. She has had many different sexual partners while working as a prostitute. She now faces the prospect of an early demise from AIDS. However, the tragedy which surrounds J.L.'s life does not necessarily make appellant guilty of felonious assault.
In examining the specific intent of "knowingly" required to sustain a felonious assault conviction, the record before us supports, at most, a finding that appellant acted "recklessly." In State v. Edwards (1992), 83 Ohio App.3d 357, 361, this court clarified the distinction:
 The mens rea for felonious assault is "knowingly." R.C. 2901.22(B) provides that:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
A defendant acts knowingly when, although he may be indifferent to the result, he is nevertheless aware that the result may occur. A defendant acts recklesslyaccording to R.C. 2901.22(C) when he is aware that thereis a risk or chance that the prescribed result mayoccur, but he nevertheless chooses to engage in the actand runs the risk. It is therefore a person's perceptionof the likelihood of the result that is the key indifferentiating between "knowingly" and "recklessly."If the result is probable, the person acts "knowingly";if it is not probable but only possible, the person acts"recklessly" if he chooses to ignore the risk. [Emphasis added.]
Appellant was apparently thinking only of himself and his own pleasure when he culminated his activities with J.L. with a single act of unprotected sex. However, there is simply no proof that he "knowingly" tried to use HIV to harm anyone else; he was seeking to satisfy himself, indifferent to the "possible" consequences to his partner.[1] Morally, his conduct is arguably little if any better whether he intended to harm J.L. or not. Medically, J.L. is infected, regardless of appellant's mental state at the time he purportedly passed the infection to her. However, in the absence of a law to the contrary, our role as judges does not allow us to cloud the issues by adjudicating appellant's immorality or irresponsible behavior as being criminal behavior.
Legally, the standpoint from which we are obligated to review this case is, of course, the words of the Ohio Revised Code which define criminal offenses — not moral nor medical wrongs. The courts are bound to follow the words of the criminal statutes enacted. In construing such statutes, we are mindful of the mandate set forth in R.C. 2901.04:
 (A) Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused.
 (B) Rules of criminal procedure and sections of the Revised Code providing for criminal procedure shall be construed so as to effect the fair, impartial, speedy, and sure administration of justice. [Emphasis added.]
Our holding in this case is clearly bolstered by the virtually express acknowledgement by the Ohio Legislature that the circumstances presented here were not adequately addressed by preexisting criminal law. As a result, the legislature recently amended R.C. 2903.11, and future offenders will potentially face felonious assault convictions for conduct similar to that which occurred here. Effective March 23, 2000, the felonious assault statute specifically added:
 (B) No person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly do any of the following:
 (1) Engage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct;
 (2) Engage in sexual conduct with a person whom the offender knows or has reasonable cause to believe lacks the mental capacity to appreciate the significance of the knowledge that the offender has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome;
 (3) Engage in sexual conduct with a person under eighteen years of age who is not the spouse of the offender.
We cannot apply the new statute to facts which occurred before its enactment. Therefore, we are compelled to find that the state presented insufficient evidence to sustain appellant's conviction for felonious assault.
The first assignment of error is sustained.
Since the argument raised in the fourth assignment of error challenging the manifest weight of the evidence is directed only at the felonious assault conviction, our ruling on the first assignment of error renders the fourth assignment of error moot.
Our ruling on the first assignment of error also renders the second assignment of error moot.
The third assignment of error addresses statements made by appellant to his probation officer which apparently were not revealed to defense counsel before trial. Although in other circumstances such a failure to reveal a defendant's statement could be critical, the error is not prejudicial here. Appellant's actions of engaging in sexual conduct with a thirteen-year old after providing her marijuana were clearly proved. His actions are clear violations of R.C. 2907.04, corruption of a minor, and R.C. 2925.02, corrupting another with drugs.
The third assignment of error is overruled.
Appellant's fifth assignment of error raises the issue of ineffective assistance of counsel. Because appellant's guilt on the corruption of a minor and corrupting another with drugs was clearly established, the performance of his defense counsel could not have prejudiced him. Thus, appellant cannot demonstrate the well-established criteria set forth in Strickland v. Washington
(1984), 466 U.S. 668, for proving ineffective assistance of counsel.
The fifth assignment of error is overruled.
In his sixth assignment of error, appellate counsel asserts that the prosecutor's comments during trial and especially in closing argument deprived appellant of due process of law. Most of the challenged comments were uttered in situations in which the prosecution referred to appellant as having "full blown AIDS." Other comments involved the expression of personal opinions about a variety of issues, including the appropriate verdicts for the jury to render. The third area of comment was a reference during closing argument to testimony which earlier had been appropriately stricken during the trial.
All three areas of comment were inappropriate, especially in the context of a trial involving such sensitive topics as AIDS and HIV. However, given the record before us, the comments could not have affected the outcome of the trial as to the charges of corruption of a minor and corrupting another with drugs. Therefore, the improprieties were not prejudicial.
The sixth assignment of error is overruled.
Therefore, in sum, we sustain the first assignment of error. The second and fourth assignments of error are rendered moot by our ruling on the first assignment of error. The third, fifth and sixth assignments of error are overruled.
Because we are vacating the judgment and sentence of the trial court with respect to the felonious assault, the trial court may wish to revisit the appropriate sentence on the remaining four charges for which appellant still stands convicted. We, therefore, remand the case with instructions to the trial court to enter a finding of "not guilty" on the felonious assault charge and for such other proceedings as the trial court deems appropriate.
PETREE, J., concurs.
LAZARUS, J., dissents.
[1] With respect to the actual known risk posed, the state's infectious disease expert witness, on cross-examination, estimated that an HIV positive man will infect a woman with HIV during an act of unprotected vaginal intercourse two percent of the time.